IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| David M. Scates, ) | Civil Action No. 6:15-2904-MBS-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | **AND ORDER** |
| ) | |
| John Doe, Jane Doe, Federal Bureau ) | |
| of Prisons, Case Manager K. Craddock, ) | |
| J Duranko, Warden Terry Obrien, ) | |
| Warden Ann Mary Carter, M. Veltri, ) | |
| D. Crickard, Unit Manager David ) | |
| Sweeny, SIS Tech Jim Ervin, and ) | |
| United States of America, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

   This matter is before the court on the defendants' motion to transfer all defendants except D. Crickard or, alternatively, motion to dismiss all defendants (doc. 27) and the plaintiff's motions for default judgment (docs. 31, 51) and motion to amend complaint (doc. 39). The plaintiff is a federal prisoner proceeding *pro se* and seeks relief pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civ. Rule 73.02(B)(2) (D.S.C.), all pretrial matters in this case were referred to the undersigned United States Magistrate Judge for consideration.

---

[1] In *Bivens*, the Supreme Court established a cause of action against federal officials for the violation of federal constitutional rights. A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983. *Harlow v. Fitzgerald*, 457 U.S. 800, 814–20 (1982). Case law involving § 1983 claims is applicable in *Bivens* actions and vice versa. *Id*. *See also Osabutey v. Welch*, 857 F.2d 220, 221–223 (4th Cir.1988).

## BACKGROUND

The plaintiff was sentenced on April 23, 1999, to 293 months incarceration, with five years supervised release, by the United States District Court for the Eastern District of Virginia for Possession of Cocaine, Aiding and Abetting, and Possession of a Firearm by a Convicted Felon Aiding and Abetting (doc. 27-1). He is presently incarcerated at the Federal Correctional Institution ("FCI") in Estill, South Carolina. The complaint and amended complaint concern actions that purportedly occurred while the plaintiff was assigned to FCI Estill, the Federal Correctional Complex ("FCC") Hazelton in Bruceton Mills, West Virginia, and the FCI in Morgantown, West Virginia (docs. 1, 17, 18).

The federal defendants named in this action are Kenneth Craddock, former Case Manager at FCC Hazelton; Jeffery Duranko, former Special Investigative Services ("SIS") Technician at FCI Morgantown; Terry O'Brien, Warden at FCC Hazelton; Anne Mary Carter, former Warden at FCI Morgantown; Marilyn Vetri, Case Management Coordinator ("CMC") at FCI Morgantown; David Crickard, former Executive Assistant/Camp Administrator at FCI Estill; David Sweeney[2], Unit Manager at FCC Hazelton; and James Ervin, SIS Technician at FCC Hazelton (doc. 1). In addition to the above-named individual defendants, the plaintiff names the federal Bureau of Prisons ("BOP"), the United States of America,[3] and John and Jane Doe as defendants in this action.

## ALLEGATIONS

In his original complaint, the plaintiff contends that while at FCI Morgantown he sought to contact the local newspaper and other media outlets in an effort to publish news articles under a byline that purportedly would expose misconduct by BOP staff. He contends that defendants John and Jane Doe, Carter, Veltri, and Crickard each violated his

_____

[2] Defendant Sweeney's name is misspelled by the plaintiff in the caption of his complaint as "Sweeny."

[3] The undersigned granted the plaintiff's motion to amend (doc. 30) to add the United States of America as a defendant on the claims under the Federal Tort Claims Act without opposition from the defendants on February 1, 2016 (doc. 41).

First Amendment rights by prohibiting him from publishing under a byline. One of the purported acts he wanted to write about involved when he was found in possession of a cell phone while at FCC Hazelton. He states he was given an incident report and transferred to FCI Morgantown to be housed in the Special Housing Unit ("SHU"). While at FCI Morgantown, he contends defendant Duranko wrongly questioned him in connection with the criminal investigation for the United States Attorney's Office. He alleges that defendant Duranko represented he was the SIS Supervisor and never informed him he was seeking information that would be used to charge him criminally with possession of a cell phone. He also claims defendant Duranko submitted an incomplete affidavit to conceal criminal charges forthcoming. The plaintiff claims that when he was transferred to FCI Estill in August 2014, defendant Crickard continued to prohibit him from publishing under a byline. He claims defendant Crickard "did absolutely nothing while attempting to comprehend the clarity of the revision in rules and the abrogation against publishing under a byline" (doc. 1 at 2-12).

The plaintiff alleges he never received a copy of the Admission and Orientation ("A&O") Handbook or mandatory inmate handbook that informed him of his rights and responsibilities in the BOP, institutional program opportunities, and the institutional disciplinary system. He claims that defendant Craddock provided a fraudulent written statement to defendant Ervin that indicated he had received a copy of the A&O Handbook. The plaintiff also alleges that defendant O'Brien wrongfully claimed the plaintiff received an A&O Handbook in a response to an administrative remedy. He also contends defendant O'Brien requested the plaintiff be transferred to a higher security institution (*id*. at 11-16).

The plaintiff claims the criminal charges for the cell phone were dismissed against him when he was able to show that he had not signed for the handbook. He alleges that thereafter defendant Sweeney retaliated against him by altering his custody classification score. He alleged defendant Sweeney raised his points so he was no longer

eligible to be housed in a minimum security institution, but was required to be housed in a low security institution (*id.* at 16-21).

In his original complaint, the plaintiff requested that the court enjoin the BOP from enforcement of any prohibition against publishing under a byline by any inmate and that the court order the BOP remove from any and all A&O Handbooks the language that prohibits publishing under a byline (*id.* at 11). He seeks $50,000 from defendants Carter, Veltri, and Crickard for violating his First Amendment rights (*id.*). He seeks $50,000 from the other defendants including John and Jane Doe in each instance where the defendants violated his constitutional rights (*id.* at 34).

In the plaintiff's amended complaint, he alleges defendant Crickard and defendants John and Jane Doe failed to comply with BOP rules that require access to administrative remedy indexes and the responses upon request (doc. 17). He contends defendant Crickard wrongly attempted "to coax and guide" him to file a request under the Freedom of Information Act ("FOIA") for access to the indexes and the responses (*id.* at 3-11). The plaintiff alleges the Administrative Procedures Act applies, and he seeks declaratory and injunctive relief from the BOP to allow him to review the indexes and responses (*id.* at 11). He also filed a supplement expanding further on the factual assertions to support this claim (doc. 18).

## MOTION TO TRANSFER OR, ALTERNATIVELY, TO DISMISS

On December 17, 2015, the defendants filed a motion to transfer all defendants except D. Crickard or, alternatively, to dismiss all defendants (doc. 27). The undersigned on December 18, 2015, issued a *Roseboro* order (doc. 28) to apprise the plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately. *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). The plaintiff filed a response in opposition on January 13, 2016 (doc. 32).

### *BOP*

The defendants argue that the BOP should be dismissed as it is not a proper party to this action regardless of whether such action is construed as a *Bivens* action, a

4

Federal Tort Claim Act ("FTCA") action, or a claim for injunctive relief. A *Bivens* cause of action is available only against federal officials in their individual capacities. *See Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001). Thus, a *Bivens* suit will not lie against the BOP. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994) (holding *Bivens* suits cannot be brought against agencies of the federal government). Further, in a FTCA claim, a federal agency cannot be sued under the FTCA. *Holmes v. Eddy*, 341 F. 2d 477, 480 (4th Cir. 1965) (holding that federal agencies cannot be sued under the FTCA); *see also* 28 U.S.C. § 1346(b) (conferring jurisdiction on courts for tort claims only "against the United States"). Only the United States is a proper defendant to a claim under the FTCA. 28 U.S.C. §§ 1346(b)(1), 2679(a). Additionally, to the extent the plaintiff has named the BOP because he is seeking an injunction requiring the BOP to update its handbooks and policies to remove prohibitions regarding publishing under a byline and allowing him to review certain administrative remedy indexes (doc. 1 at 11; doc. 17 at 10-11), he has failed to exhaust his administrative remedies in regard to such issues, as will be discussed below. Based upon the foregoing, the BOP should be dismissed from this action.

**FTCA**

As noted above, only the United States is a proper defendant to a claim under the FTCA. 28 U.S.C. §§ 1346(b)(1), 2679(a). The defendants argue that the plaintiff's FTCA claims should be dismissed because the plaintiff has failed to name the proper defendant (doc. 27 at 3). However, after the filing of the defendants' motion, the undersigned granted the plaintiff's motion to amend (doc. 30) to add the United States as a defendant under the FTCA, without opposition from the defendants (doc. 41). The defendants, however, have requested the right to address the plaintiff's allegations against the United States by dispositive motion (doc. 36 at 2). Based upon the foregoing, the defendants' motion to dismiss the plaintiff's FTCA claims should be denied as the plaintiff has now named the proper defendant as to those claims.

***Bivens***

        *Bivens* claims for money damages are not actionable against the United States, federal agencies, or public officials acting in their official capacities. *F.D.I.C. v. Meyer*, 510 U.S. 471, 484-6 (1994) (holding *Bivens* suits cannot be brought against agencies of the federal government). As will be discussed below, of the individual defendants, this court has personal jurisdiction over only defendant Crickard as he worked within the District of South Carolina at the times relevant to the plaintiff's allegations and the claims against him arose here (doc. 27-6, Crickard decl.). Accordingly, any constitutional claims against the United States, the BOP, and defendant Crickard in his official capacity must be dismissed with prejudice, and any *Bivens* action may proceed, if at all, against only defendant Crickard in his individual capacity.

        The defendants argue that the plaintiff failed to exhaust his administrative remedies as to his claims against defendant Crickard. The undersigned agrees. The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that prisoners exhaust their administrative remedies prior to filing civil actions concerning prison conditions. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). Exhaustion is required for "all action[s] ... brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotations omitted). "[T]he PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532. Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216; *Anderson*, 407 F.3d at 681. No unexhausted claims may be considered by the court; such claims must be dismissed. *Jones*, 549 U.S. at 211. "Requiring

6

exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court." *Id.* at 204. It also has the "potential to reduce the number of inmate suits and to improve the quality of suits that are filed by producing a useful administrative record.*" Id.*

The PLRA requires "proper exhaustion" of available administrative remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). As the Supreme Court noted, "[a]ggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons," whether it be concerns about efficiency or "bad faith." *Id.* at 89-90. This is especially true in a prison context. *Id.* at 90 n.1. Nevertheless, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

The BOP has a three-tiered formal administrative grievance process, although there is also an informal resolution process. *See* 28 C.F.R. §§ 542.10 *et seq*. An inmate may complain about any aspect of his confinement by first seeking to informally resolve the complaint at the institution level. *Id.* § 542.13. If the matter cannot be resolved informally, the inmate may file a formal written complaint to the warden within 20 calendar days after the date upon which the basis for the request occurred. *Id.* § 542.14. The matter will be investigated, and a written response provided to the inmate. *Id.* If dissatisfied with the response, the inmate may appeal to the Regional Director within 20 days of the date of the Warden's response. *Id.* § 542.15(a). If dissatisfied with the regional response, the inmate may appeal to the Central Office within 30 days of the Regional Director's response. *Id.* Appeal to the Central Office is the final level of agency review. *Id.* If during this process, the inmate does not receive a response from the Warden, Regional Director, or Central Office within the allotted time frames including extensions, the inmate may consider such response or appeal as denied and appeal to the next level. *Id.* § 542.18.

The plaintiff first alleges that defendant Crickard violated his First Amendment rights by prohibiting him from publishing under a byline (doc. 1 at 2-11). The plaintiff filed

an administrative remedy (BP-9) on June 30, 2013, alleging he had been denied the right to publish under a byline since May 2012 through July 2013, while at FCI Butner (Low) and FCI Morgantown, therefore violating his First Amendment rights (doc. 27-11, Tami Cassaro decl. & att. B, Request for Administrative Remedy, #740909-F1). Defendants Carter and Veltri both worked at FCI Morgantown during this time, and according to the plaintiff, they both denied him the right to publish under a byline (doc. 1 at 3-4). On July 17, 2013, defendant Carter, who was then Warden at FCI Morgantown, responded to the plaintiff's administrative remedy (doc. 27-11, Cassaro decl. & att. C, Response to Request for Administrative Remedy, #740909-F1). In the response, defendant Carter acknowledged that although policy had not yet been updated, the applicable regulations (Code of Federal Regulations) had removed the statement that an inmate cannot publish under a byline (*id.*). The response did not address whether the plaintiff's First Amendment rights were violated (*id.*). Rather, the response summarized the plaintiff's request as asking permission to publish under a byline, and the request was granted (*id.*).

On or about July 18, 2013, the plaintiff submitted a Regional Administrative Remedy Appeal (BP-10) to the Mid-Atlantic Regional Director alleging that the Warden's response to his remedy did not address the issue in his complaint (*id.* & att. D, Regional Administrative Remedy Appeal, #740909-R1). In his BP-10, the plaintiff stated that his First Amendment rights were violated from May 2012 until July 2013, while he was housed at FCI Butner (Low) and FCI Morgantown (*id.*). The Regional Director responded on August 2, 2013 (*id.* & att. E, Response to Regional Administrative Remedy Appeal, #740909-R1). The Regional Director's response summarized the plaintiff' appeal for requesting permission to publish under a byline and requesting compensation for denial of his rights. The Regional Director found that the Warden's response thoroughly addressed his concerns. He noted that compensatory damages were not available in the administrative remedy process. The response did not address whether the plaintiff's First Amendment rights were violated. The plaintiff's appeal was partially granted (*id.*).

On or about August 7, 2013, the plaintiff submitted a Central Office Administrative Remedy Appeal (BP-11), wherein he appealed the responses of the Warden and the Mid-Atlantic Regional Director (*id.* & att. F, Central Office Administrative Remedy Appeal, #740909-A1). In his BP-11, the plaintiff alleged that both the Warden and Regional Director incorrectly cited to the wrong program statement as being controlling in regard to publishing under a byline. He stated that the controlling program statement had been revised a full year prior to him being denied his rights and two years before "the Morgantown incident." He claimed staff should have known he could publish under a byline. He requested staff admit they applied the wrong policy. He ended by stating he wanted to publish (*id.*). This appeal was rejected on or about August 26, 2013, because the plaintiff did not submit the proper number of continuation pages and all four pages must be legible (*id.* & att. G, Rejection Notice -- Administrative Remedy, #740909-A1). In the Rejection Notice, the plaintiff was told he did not need a new BP-11 form and he had 15 days to resubmit his appeal (*id.*). Subsequently, on or about September 19, 2013, the plaintiff resubmitted his BP-11 appeal (*id.* & att. A at 007). Due to time constraints, the Central Office did not respond to the BP-11, Remedy #740909-A2, until August 20, 2015 (*id.*). The Central Office found that the Warden and the Regional Director adequately addressed the plaintiff's complaint and concurred with the responses provided (*id.* & att. H, Response to Central Office Administrative Remedy Appeal, #740909-A2). The Central Office informed the plaintiff that there was no indication that staff relied on incorrect policy when responding to his remedy. The response recognized that the plaintiff had been advised that controlling policy had yet to be updated; however, he would not be prohibited from contacting the media for the sole purpose of publishing under a byline. Finally, the plaintiff was advised that, since he was now at FCI Estill, he should address any further concerns regarding this matter with his current Unit Team. The response noted that no further review or relief was warranted (*id.*).

The defendants recognize that the Fourth Circuit has determined that a prisoner's failure to name specific individuals in a grievance does not later preclude a

Section 1983 or *Bivens* suit against the individuals because the grievance process does not require an inmate to identify specific individuals in his or her grievances. *Moore v. Bennette*, 517 F.3d 717, 726 (4th Cir. 2008). *See Jenkins v. Federal Bureau of Prisons, et al.*, 3:10-1968-CMC-JRM, 2011 WL 4482074 (D.S.C. Sept. 26, 2011). However, the defendants argue that the case at hand can be distinguished from the *Moore* and *Jenkins* cases in regard to whether the plaintiff has exhausted his administrative remedies as to defendant Crickard. The undersigned agrees. As clearly shown above, the plaintiff's administrative remedy in regard to his allegations that his First Amendment rights were violated involved a specific time period from May 2012 through July 2013, involving two other BOP institutions. Defendant Crickard did not work at either location during the time frame specified in the remedy or any time during his BOP career. Even though the plaintiff does not mention any specific names in the above-referenced remedy as to who violated his First Amendment rights, he does mention dates and institutions, neither of which involved a time period or institution where Defendant Crickard had any communications or contact with the plaintiff. Therefore, any alleged First Amendment rights violations that the plaintiff now asserts against defendant Crickard are clearly not part of the above-referenced exhausted remedy, #740909-F1, R1, and A2, concerning the plaintiff's earlier claims that his First Amendment were violated.

      As noted by the defendants, shortly after the plaintiff arrived at FCI Estill, he filed a BP-8 1/2 (often called an Informal Resolution) with his Unit Team on November 23, 2104, asking when the Central Office was going to respond to Remedy # 740909-A2, concerning whether his First Amendment rights were violated (doc. 11, Cassaro decl. & att. I, Informal Resolution Documentation Form). The plaintiff acknowledged on the Informal Resolution Documentation Form under "Section I. Inmate Complaint/Action" that defendant Crickard and his Correctional Counselor "have done a fantastic job of trying to address my concerns . . . ." (*id.*). The plaintiff did not mention that defendant Crickard or anyone at FCI Estill had violated his First Amendment rights (*id.*). Additionally, as argued by the defendants, a review of the 102 administrative remedy submissions filed by the plaintiff, 34

of which were filed since the plaintiff arrived at FCI Estill, shows he has not exhausted his administrative remedies regarding whether his First Amendment rights have been violated by defendant Crickard or while incarcerated at FCI Estill (*id.* & att. A). In his complaint, the plaintiff also requests that the court order the BOP to remove from any and all A&O Handbooks the language that prohibits publishing under a byline (doc. 1 at 11). The plaintiff has also failed to file an administrative remedy seeking to have the A&O Handbook at FCI Estill changed to reflect current policy in regard to allowing an inmate to publish under a byline. As the plaintiff has failed to exhaust all issues in his complaint regarding the alleged violation of his First Amendment rights by defendant Crickard or the BOP, such claims should be dismissed.

The plaintiff next alleges that defendant Crickard failed to comply with BOP rules which require access to administrative remedy indexes and the responses upon request (doc. 17). The plaintiff alleges the Administrative Procedure Act applies, and he seeks declaratory and injunctive relief from the BOP to allow him to review the indexes and responses (*id.* at 11). He also filed a supplement expanding further on the factual assertions to support this claim (doc. 18). As noted by the defendants, the plaintiff had just begun the administrative remedy process when he filed this new claim with the court on August 28, 2015 (doc. 17), and such claim had not been exhausted (doc. 11, Cassaro decl. & att. J, Request for Administrative Remedy #831158-F1). On August 4, 2015, the plaintiff filed an Administrative Remedy Request to inspect copies of specific administrative remedy indexes and responses, which he claims he is entitled to do according to policy (*id.*). On August 17, 2015, the plaintiff's claim was denied by the Warden (*id.* & att. K, Response to Request for Administrative Remedy #831158-F1). The plaintiff was advised that he needed to make a formal request through the FOIA, as the responses contain the names, register numbers, and specific information that may or may not be releaseable for security reasons (*id.*). On or about August 20, 2015, the plaintiff submitted to the Southeast Regional Director a Regional Administrative Remedy Appeal of the Warden's response in regard to his request to see the indexes and responses he previously requested (*id.* & att. L,

11

Regional Administrative Remedy Appeal, #831158-R1). The Regional Director responded on September 25, 2015 (*id.* & att. M, Response to Regional Administrative Remedy Appeal, #831158-R1). The Regional Director upheld the Warden's response and denied the plaintiff's appeal request. The plaintiff was informed again that the responses he had requested to view contained names that were absolutely essential to include in the responses, and register numbers and specific information that may or may not be releaseable for security reasons. The plaintiff was advised to submit such request through the FOIA (*id.*). Records reveal that on or about October 20, 2015, the plaintiff submitted to the Central Office an appeal of the responses from the Warden and Regional Director (*id.* & att. A at 011). A response was due November 5, 2015, and because of high volumes of appeals, a response is pending (*id.*).

As argued by the defendants, based on the above, it is clear that the plaintiff failed to exhaust the issues set forth in his amended complaint and supplement (docs. 17, 18)[4] prior to filing with regard to defendant Crickard and the BOP, and therefore such claims should be dismissed. *See Woodford*, 548 U.S. at 90-91 (prisoners must "properly exhaust" their administrative remedies before coming into court by using all steps available and doing it the way the agency's policy requires).

The plaintiff's claims against defendant Crickard also fail to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 531 (D.S.C. 2014) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Rule 8(a) sets forth a liberal pleading standard, which requires only a " 'short and plain statement of the claim showing the pleader is entitled to relief,' in order to 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355

---

[4] The amended complaint (doc. 17) was filed on August 28, 2015, and the supplement was filed on August 31, 2015 (doc. 18).

U.S. 41, 47 (1957)). "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 569). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

While a complaint "does not need [to allege] detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]'—'that the pleader is entitled to relief.' " *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). When determining a motion to dismiss pursuant to Rule 12(b)(6), the court must take all well-pled material allegations of the complaint as admitted and view them in the light most favorable to the non-moving party. *De Sole v. U.S.*, 947 F.2d 1169, 1171 (4th Cir. 1991) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)). The court must liberally construe *pro se* complaints to allow the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), and such *pro se* complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978).

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc*., 637 F.3d 435, 448 (4th Cir. 2011). The court may consider such a document, even if it is not attached to the complaint, if the document "was integral to and explicitly relied on in the complaint," and

there is no authenticity challenge. *Id*. at 448 (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). *See also Int'l Ass'n of Machinists & Aerospace Workers v. Haley*, 832 F. Supp. 2d 612, 622 (D.S.C. 2011), aff'd, 482 F. App'x 759 (4th Cir. 2012) ("In evaluating a motion to dismiss under Rule 12(b)(6), the Court… may also "consider documents attached to… the motion to dismiss, so long as they are integral to the complaint and authentic.") (quoting *Sec'y of State for Def. v. Trimble Navigation Ltd*., 484 F.3d 700, 705 (4th Cir. 2007)).

The plaintiff's allegations that the A&O Handbook at FCI Estill still contains language that prohibits inmates from publishing under a byline, which is contrary to current policy, does not amount to a constitutional violation by defendant Crickard. A claim that the BOP or one of its employees violated policy fails to rise to the level of a constitutional violation and is not cognizable under *Bivens*. *McDonald v. U.S.*, No. 2:07cv82, 2008 WL 4615017, at *4 (N.D.W. Va. Oct 14, 2008); *see Grubbs v. Greer*, No. 5:07cv123-DCB-MTP, 2008 WL 3896697, at *3 (S.D. Miss. Aug. 19, 2008) (violation of P.S. 3420.09, or any program statement, does not rise to level of constitutional violation)(citing *Hernandez v. Estelle*, 788 F. 2d 1154, 1158 (5th Cir. 1986) (mere failure to follow prison's internal regulations does not amount to constitutional violation)). Furthermore, at most, the plaintiff's claim that defendant "Crickard did absolutely nothing while attempting to comprehend the clarity of the revision in the rules and the abrogation against publishing under a byline" (doc. 1 at 6) at most constitutes a claim of negligence that is not actionable under the First Amendment. It is well-settled that the failure of officials to exercise due care is not sufficient to raise a constitutional claim. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). As the Supreme Court has stated, "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Thus, such *Bivens* claims against defendant Crickard should be dismissed.

14

***Administrative Procedures Act***

In his amended complaint, the plaintiff alleges that he is proceeding under the Administrative Procedures Act ("APA") in regard to his request to review specific administrative remedy indexes and responses (doc. 17 at 10-11). As set forth above, the BOP has established an administrative procedure whereby a federal inmate may seek review of complaints relating to any aspect of his or her confinement. *See* 28 C.F.R. § 542.10. Title 18, United States Code, Section 3625 specifically excludes APA jurisdiction over any "making of any determination, decision, or order under this subchapter." The administrative remedy program is part of postsentence administration and, therefore, may not be reviewed under the APA. *See* 5 U.S.C. § 701(a)(1) (APA does not apply if statute precludes review). Furthermore,

> [T]o pursue a claim under the [APA], 5 U.S.C. §§ 701–06, [a plaintiff] must establish that he is "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute;" **and** the agency action is either made reviewable by statute or is a final agency action for which there is no other adequate remedy in a court. 5 U.S.C. § 704. Agency action that does not fall within one of these two categories is not reviewable by the district court under the APA. *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 459–60 (4th Cir.2004).

*Jacobus v. Huerta*, 2013 WL 673233, at *13 (S.D. W. Va. Feb. 22, 2013) (dismissing APA claim because plaintiff could seek relief under FTCA or *Bivens*) (emphasis in original), *R&R adopted by* 2013 WL 1723631 (S.D. W. Va. April 22, 2013). Here, the plaintiff has not shown that he has no other adequate remedy. Accordingly, the plaintiff's APA claim against defendants Crickard and the BOP should be dismissed.

***Personal Jurisdiction***

The defendants argue that this court does not have personal jurisdiction over defendants Craddock, Duranko, O'Brien, Carter, Veltri, Sweeney, and Ervin. The undersigned agrees.

When personal jurisdiction is challenged by the defendant, the plaintiff has the burden of showing that jurisdiction exists. *See In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). "[T]o validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied." *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must not "overstep the bounds" of the Fourteenth Amendment's Due Process Clause. *Anita's N.M. Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.*, 201 F.3d 314, 317 (4th Cir. 2000). South Carolina's long-arm statute has been construed to extend to the outer limits allowed by the Due Process Clause. *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002). "Because South Carolina treats its long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction would violate due process." *Cockrell v. Hillerich & Bradsby Co.*, 611 S.E.2d 505, 508 (S.C. 2005).

The scope of the court's inquiry is therefore whether a defendant has "certain minimum contacts" with the forum, such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). A defendant has minimum contacts with a state when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980). Under this standard, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The analytical framework for determining whether personal jurisdiction exists differs according to which type of personal jurisdiction—general or specific—is alleged. *See generally ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623–24 (4th Cir. 1997). When a cause of action arises out of a defendant's contacts with the forum, a court may seek to

exercise specific jurisdiction over a defendant that purposefully directs activities toward the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985). The Fourth Circuit applies a three-part test when evaluating the propriety of exercising specific jurisdiction: (1) whether and to what extent the defendant purposely availed itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable." *Nolan*, 259 F.3d at 215–16 (citing *Helicopteros*, 466 U.S. at 414–16; *Burger King*, 471 U.S. at 472, 476–77). When the cause of action does not arise out of a defendant's contacts with the forum, general jurisdiction may be exercised upon a showing that the defendant's contacts are of a "continuous and systematic" nature. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

Defendant Craddock is a DHO at FCC Hazelton, and his office is located in Bruceton Mills, West Virginia (doc. 27-3, Craddock decl.). At the time period referenced in the complaint, he was a Case Manager at FCC Hazelton. He has no contacts with South Carolina: he has never resided, worked, or owned real property within South Carolina during any times relevant to the complaint (*id.*).

Defendant Duranko was a SIS Technician at FCI Morgantown, West Virginia, before he retired from the BOP (doc. 27-4, Duranko decl.). Defendant Duranko has no contacts with South Carolina: he has never resided, worked, or owned real property within South Carolina during any times relevant to the complaint (*id.*).

Defendant O'Brien is the Warden at FCC Hazelton, in Bruceton Mills, West Virginia (doc. 27-8, O'Brien decl.). Defendant O'Brien has no contacts with South Carolina: he has never resided, worked, or owned real property within South Carolina during all times relevant to the complaint (*id.*).

Defendant Carter was the Warden at FCI Morgantown in West Virginia before she retired from the BOP (doc. 27-5, Carter decl.). Defendant Carter has no contacts with

South Carolina: she has never resided, worked, or owned real property within South Carolina during any times relevant to the complaint (*id.*).

Defendant Veltri is the Case Manager Coordinator at FCI Morgantown, and her office is located in Morgantown, West Virginia (doc. 27-9, Veltri decl.). Defendant Veltri has no contacts with South Carolina: she has never resided, worked, or owned real property within South Carolina during any times relevant to the complaint (*id.*).

Defendant Sweeney is the Camp Administrator at FCC Terre Haute, and his office is located in Terre Haute, Indiana (doc. 27-7, Sweeney decl.). At the time period referenced in the complaint, he was a Unit Manager at FCC Hazelton (*id.*). Defendant Sweeney has no contacts with South Carolina: he has never resided, worked, or owned real property within South Carolina during any times relevant to the complaint (*id.*).

Defendant Ervin is an SIS Technician at FCC Hazelton, and his office is located in Bruceton Mills, West Virginia (doc. 27-10, Ervin decl.). Defendant Ervin has no contacts with South Carolina: he has never resided, worked, or owned real property within South Carolina during any times relevant to the complaint (*id.*).

The plaintiff contends in his response that personal jurisdiction exists because the defendants "were acutely aware that their actions would cause transfer to another institution outside of the State of West Virginia" and "could cause Plaintiff to be transferred to any institution with the United States, including yet not limited to South Carolina" (doc. 32 at 26-27). The argument is unavailing. The plaintiff has failed to satisfy the test for specific jurisdiction and has further failed to show these defendants had contacts with South Carolina of a "continuous and systematic" nature for general jurisdiction. Accordingly, defendants Craddock, Duranko, O'Brien, Carter, Veltri, Sweeney, and Ervin, could not reasonably anticipate being haled into court in South Carolina, and this court lacks personal jurisdiction over them. *See Burger King*, 471 U.S. at 475.

Rather than dismissal, the defendants ask that the court transfer the case against defendants Craddock, Duranko, O'Brien, Carter, Veltri, Sweeney, and Ervin to the United States District Court for the Northern District of West Virginia pursuant to 28 U.S.C.

§ 1406(a), which authorizes the court to transfer a case to the appropriate venue that would have personal jurisdiction even though the transferring court lacks personal jurisdiction. *See Informaxion Solutions, Inc. v. Vanus Group*, C.A. No. 2:15-cv-290-PMD, 2015 WL 7184562, at *3 (Nov. 10, 2015) ("When a court is an improper venue to hear a dispute and lacks personal jurisdiction over the defendants, § 1406(a) authorizes this Court to transfer the case to an appropriate venue that would have personal jurisdiction.") (citation omitted). "Additionally, any transfer made pursuant to § 1406(a) must be made 'in the interest of justice.' " *Id.* (quoting 28 U.S.C. §1406(a)). " 'A transfer rather than a dismissal was in the interest of justice when the defendants were not subject to personal jurisdiction in the transferor district, a transfer would save the parties the time and expense of refiling the lawsuit, and the requirements of venue and personal jurisdiction apparently would be satisfied in the transferee district.' " *Id.* (quoting *Capital Bank Int'l Ltd v. Citigroup, Inc.*, 276 F. Supp. 72, 78 (D.D.C. 2003)).

These defendants note that the events giving rise to the claims against them occurred while the plaintiff was confined at two federal prisons, FCC Hazelton and FCI Morgantown, both located in West Virginia (doc. 27 at 11-12). A *Bivens* case may be brought only in (1) a judicial district where any defendant resides, if all reside in the same state, (2) where "a substantial part" of the events or omissions giving rise to the claim occurred, or (3) a district which any defendant may be found, if there is no district in which the action may otherwise be brought. *See* 28 U.S.C. § 1391(b). An FTCA action against the United States "may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b).

The plaintiff states in his response that he prefers transfer of the case to dismissal of the aforementioned defendants so that additional filing and associated expenses would not be required (doc. 32 at 27). Accordingly, should the District Court adopt the undersigned's recommendation dismissing defendant Crickard, the undersigned recommends that the case against the United States of America, Craddock, Duranko, O'Brien, Carter, Veltri, Sweeney, and Ervin be transferred to the United States District Court

19

for the Northern District of West Virginia pursuant to 28 U.S.C. § 1406(a). If the District Court does not adopt this court's recommendation that defendant Crickard be dismissed from this action, which would require the case against him to proceed in this District, the undersigned recommends in the alternative that defendants Craddock, Duranko, O'Brien, Carter, Veltri, Sweeney, and Ervin be dismissed from this case for lack of personal jurisdiction.

## MOTIONS FOR DEFAULT JUDGMENT

The plaintiff has filed motions for default judgment against defendants John Doe (doc. 31) and Crickard (doc. 51). Federal Rule of Civil Procedure 55(a) provides that when a party "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55(b) provides that a party must then apply to the court for a default judgment. *Id.* 55(b).

On August 11, 2015, this court issued an order authorizing service of the plaintiff's complaint on the above-named defendants (doc. 13). On August 12, 2015, summons were issued to Carter, K. Craddock, Crickard, Jane Doe, John Doe, Duranko, Ervin, BOP, O'Brien, Sweeney, Veltri, the United States Attorney, and United States Attorney General (doc. 15). The docket indicates that on August 21, 2015, a summons was returned executed on the BOP and the United States Attorney General (doc. 19), and on September 9, 2015, a summons was returned executed as to Crickard (doc. 20). The docket shows that on September 2, 2015, summonses were returned executed on Craddock, Ervin, O'Brien, David Sweeney, and Veltri (doc. 25), and on November 23, 2015, summonses were returned executed on Carter and Duranko (doc. 26). On October 20, 2015, on behalf of the individual named federal defendants, the United States Attorney's Office for the District of South Carolina filed a motion to consolidate response times and for an extension of time (doc. 21). In the motion, the United States indicated that the individual defendants had submitted representation requests to the Department of Justice, and the requests were pending (*id.* at 2). The motion was granted on October 21, 2015 (doc. 22).

On December 17, 2015, the defendants filed the motion to transfer all defendants except Crickard or, alternatively, motion to dismiss all defendants (doc. 27).

The plaintiff states that on about August 31, 2015, the United States Marshal Service served defendant John Doe at 302 Sentinel Drive, Suite 200, Annapolis Junction, Maryland (doc. 31 at 1). He alleges that service was "accomplished by and through Timothy Barnett, RRM. (See Process receipt and Return #5)" (*id.*). The plaintiff argues that John Doe was properly served and failed to respond within the allotted timeframe in accordance with Federal Rule of Civil Procedure 12 (*id.* at 2). He claims he is entitled to judgment by default along with the relief demanded in the complaint of $50,000 (*id.*). As noted above, the docket of this case does not indicate any summons was returned executed on the Doe defendants. The plaintiff, however, has submitted a copy of a Form USM-285 that shows acceptance of service on "John Doe" at 302 Sentinel Dr., Suite 200, Annapolis Junction, Maryland 20701 by Timothy Barnett RRM (doc. 40-2). However, as argued by the defendants in their response in opposition to the motion for default judgment (doc. 34), even if BOP staff member Timothy Barnett signed accepting service for defendant John Doe, such service is not valid as John Doe is not an identified named individual, and Mr. Barnett would not be authorized to accept service for the John Doe defendant. Furthermore, the United States made clear in its responsive pleading that it does not represent John or Jane Doe (doc. 27 at 2 n. 7).

Based upon the foregoing, the plaintiff's motion for default judgment against defendant John Doe (doc. 31) should be denied. Moreover, the plaintiff has failed to identify and properly serve the John Doe and Jane Doe defendants within the 120-day period[5] that was applicable at the time service was authorized in this case on August 11, 2015 (doc. 13). Accordingly, the John Doe and Jane Doe defendants should be dismissed from this action pursuant to Federal Rule of Civil Procedure 4(m).

---

[5] The time period for service has since been shortened to 90 days. *See* Fed. R. Civ. P. 4(m) (2016).

With regard to his motion for default judgment against defendant Crickard, the plaintiff states that in his original and/or supplemental pleadings, he set forth that defendant Crickard violated his Sixth Amendment rights (doc. 51 at 2). He alleges he has properly exhausted his remedy related to his specific Sixth Amendment claim in administrative remedy number 739688-F1, R-1, and A2 (*id.*). The plaintiff contends that defendant Crickard provided a declaration wherein he conceded that the plaintiff's pleadings asserted he had violated the plaintiff's First and Sixth Amendment rights, and defendant Crickard did not deny violating the plaintiff's Sixth Amendment rights (*id.* at 3). The plaintiff claims he is thus entitled to default judgment against defendant Crickard (*id.*).

The plaintiff's motion is meritless and should be denied. In the original complaint[6], the plaintiff does allege his Sixth Amendment rights were violated by several defendants, but defendant Crickard's name is not included in the names of defendants who allegedly violated the plaintiff's Sixth Amendment rights (doc. 1 at 22-24). The plaintiff's arguments as they relate to his Sixth Amendment rights center around the allegation that he has been prohibited from discussing the facts in a criminal case brought against him after a cell phone was discovered in his front pocket on February 16, 2013, while he was housed at FCC Hazelton (*id.* at 12-24). He contends that the Central Office's denial of one of his administrative remedies on June 9, 2015, in regard to this criminal matter meant he was still not allowed to discuss the incident involving his criminal case at any time while he is housed in BOP's custody (*id.* at 22). Since the plaintiff was in FCI Estill at the time of the denial of that administrative remedy, the plaintiff is apparently now arguing that defendant Crickard violated his Sixth Amendment rights even though defendant Crickard had nothing to do with anything related to the plaintiff's criminal case in 2013. Despite what the plaintiff *now* argues, such an allegation was not included in the plaintiff's complaint. Accordingly,

---

[6] The plaintiff does not allege Sixth Amendment claims in his amended complaint (docs. 17, 18).

22

defendant Crickard was not required to address any Sixth Amendment allegation in his responsive pleading.

The plaintiff argues in reply that his pleadings should be "construed liberally and are not held to the same standards as trained counsel" (doc. 57 at 2-3). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999), construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985). Here, the plaintiff did not allege a Sixth Amendment claim against defendant Crickard. Accordingly, the motion for default judgment (doc. 51) is meritless and should be denied.

## **MOTION TO AMEND**

On January 25, 2016, the plaintiff filed his second motion to amend his complaint (doc. 39). The defendants filed opposition to the motion (doc. 50) on February 10, 2016, and the plaintiff filed a reply on Feburary 22, 2016 (doc 54). Pursuant to Federal Rule of Civil procedure 15(a), a plaintiff may amend his pleading once a matter of course, meaning without the opposing party's consent or the court's leave, within 21 days after serving the pleading or within 21 days after service of a responsive pleading or service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a). In all other cases, a plaintiff must seek leave of court. *Id.* 15(a)(2). Here, the plaintiff must seek leave of court. Amendments are generally freely given unless doing so would be prejudicial to the opposing party, have been made in bad faith, or would be futile. *See id.*; *Jones v. Lexington County Det. Ctr.*, 586 F. Supp. 2d 444, 450 (D.S.C. 2008) (denying motion to amend as futile).

In his second motion to amend (doc. 39), the plaintiff contends that he was unable to address the issues set forth in his amended complaint (doc. 17), which regard

defendant Crickard's alleged failure allow the plaintiff access to administrative remedy indexes and responses upon request, as the administrative remedy process was not available to him; thus, he claims he effectively exhausted his remedies (doc. 39 at 3).  The plaintiff contends that he has properly filed several BP 8½ informal responses, including asking to inspect other administrative remedy indexes, and staff have not responded to his requests (*id.* at 3-4).  He also asserts that he has requested copies of all his own administrative remedy filings with exhibits, copouts (requests to staff forms), or any attachments, but staff have failed to respond and failed to provide him the proper forms in which to proceed (*id.* at 4).

The defendants argue in response that the plaintiff's claim that the administrative remedy process was not available to him on his new BP-8½ informal responses is irrelevant to the defendants' argument that the plaintiff failed to exhaust the administrative remedy process prior to filing his amended complaint (doc. 17) in this court. The undersigned agrees.  The plaintiff had already filed his BP-9 requesting to inspect copies of the administrative remedy indexes and responses and received a response from the Warden before he filed his amended complaint (doc. 27-11, Cassaro decl. & atts. J-K). He had also filed his BP-10 appeal before he filed his amended complaint (*id.* & att. L). However, the plaintiff had not received a response yet from the Regional Director and had not filed an appeal to the Central Office before he filed his amended complaint, as argued by the defendants in their motion to transfer or dismiss (doc. 27 at 19-20).  Accordingly, as argued in the defendants' motion, the plaintiff had not properly exhausted his administrative remedies before coming into court with this claim, and, accordingly, the claim against defendant Crickard should be dismissed as discussed above.  Allowing the plaintiff to amend his complaint to allege that he has continued to submit other BP 8½ informal requests, including asking to inspect other administrative remedy indexes, which he contends have not been responded to by staff, is irrelevant to this issue, and thus, such an amendment would be futile.  To the extent that the plaintiff wishes to amend his complaint to allege that he has not received copies of his own filings, again it appears that the plaintiff

has not exhausted this issue prior to filing this lawsuit.  Moreover, the defendants point out that inmates are given a copy of requests, appeals, and responses, and are encouraged to keep copies of any exhibits attached to their administrative remedy requests (doc. 50 at 3).  Accordingly, the motion to amend (doc. 39) is denied.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, IT IS RECOMMENDED that the plaintiff's claims against defendants Crickard and the BOP be dismissed for failure to exhaust or, in the alternative, for failure to state a claim and that defendants John Doe and Jane Doe be dismissed based on the plaintiff's failure to timely identify and serve them.  IT IS FURTHER RECOMMENDED that the defendants' motion to transfer (doc. 27) the case against the remaining defendants Craddock, Duranko, O'Brien, Carter, Veltri, Sweeney, Ervin, and the United States of America[7] to the United States District Court for the Northern District of West Virginia be granted and that the plaintiff's motions for default judgment (docs. 31, 51) be denied. Further, IT IS ORDERED that the plaintiff's motion to amend his complaint (doc. 39) is denied.

IT IS SO RECOMMENDED AND ORDERED.


May 6, 2016                                         s/ Kevin F. McDonald
Greenville, South Carolina                         United States Magistrate Judge

---

[7] As discussed above, the United States of America was added as a defendant without objection by the defendants after the filing of the motion to transfer all defendants except D. Crickard or, alternatively, to dismiss all defendants (*see* docs. 27, 30, 41).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
300 East Washington Street
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).